UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v- | No. 15-cr-605-4 (RJS)<br>ORDER |
| MARLON SISNERO-GIL, | |
| Defendant. | |

RICHARD J. SULLIVAN, Circuit Judge:

In April 2016, Defendant Marlon Sisnero-Gil ("Sisnero-Gil") failed to appear for a pre-trial conference and became a fugitive. Thereafter, the Court entered default judgment in the amount of $100,000 in favor of the government against Sisnero-Gil and the co-signors of his personal recognizance bond – his sisters, Tanyi Gil ("Tanyi") and Linette Sisnero-Gil ("Linette," and together with Tanyi, the "Sureties") – jointly and severally.[1] (Doc. No. 80.)

Without assistance from the Sureties, Sisnero-Gil was eventually apprehended in the Dominican Republic and extradited to this District, where he later pleaded guilty to charges including conspiracy to distribute at least five kilograms of cocaine, distribution of at least 500 grams of cocaine, and bail jumping. (*See* Doc. Nos. 173, 185.) On November 18, 2020, the Court sentenced Sisnero-Gil to 180 months' imprisonment. (Doc. No. 230.) Shortly before sentencing, the Court received motions from the Sureties asking the Court to vacate or remit the judgments against them. (Doc. Nos. 225, 228.) The government does not oppose the requests. (Doc. No. 231.) For the reasons set forth below, the motions are granted.

---

[1] Because Defendant and the Sureties share the same or similar last names, for clarity, the Court refers to Defendant by his last name and the Sureties by their first names.

The Court may set aside judgments on the forfeiture of bail bonds in whole or in part if "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f). "Discretion is vested in the district court with regard to forfeitures of bail bonds." *United States v. Egan*, 394 F.2d 262, 267 (2d Cir. 1968). "The burden of establishing grounds for remission is on the party challenging the forfeiture." *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994). In considering whether to grant a remission motion, courts are to analyze several factors, including

> [1] whether the defendant's breach of the bond conditions was willful; [2] the cost, inconvenience[,] and prejudice suffered by the government as a result of the breach; [3] any explanation or mitigating factors presented by the defendant; [4] whether the surety has assisted in the apprehension of the defendant; and [5] whether the surety is a professional or a friend or member of the defendant's family.

*Id.* (internal quotation marks and ellipsis omitted). The Court must also consider the "deterrence value of total forfeiture." *Id.* at 575.

Here, the first and third factors do not favor the Sureties. As to these, Tanyi's submission concedes that "we cannot speak to the defendant's willful failure to appear – though we assume it was willful – and do not know what if any mitigating factors applied" to Sisnero-Gil's flight. (Doc. No. 241 at 3.) Similarly, Linette "acknowledges that her brother's flight was willful." (Doc. No. 225 at 2.) Although she argues that "several mitigating factors warrant remission of the judgment against her" (*id.*), the factors she identifies do not explain Sisnero-Gil's flight or mitigate the breach of his bond. To the extent that Tanyi reads the third factor as addressing mitigating circumstances generally rather than pertaining exclusively to Sisnero-Gil's actions, that interpretation is not supported by *Gambino*, which references "any explanation or mitigating factors presented *by the defendant*," 17 F.3d at 575 (emphasis added) (internal quotation marks omitted); *see also United States v. Brooks*, 872 F.3d 78, 95 (2d Cir. 2017) (examining whether the

defendant subject to the bail – not the appellants seeking remission – "presented [an] adequate explanation or mitigating factors for his lack of disclosure"). In view of the record before the Court, the history of the proceedings, and Sisnero-Gil's statements at sentencing in which he accepted responsibility for fleeing the jurisdiction while on bail, there is little question that he willfully breached the bond conditions by purposefully absconding before trial. *See, e.g.*, *United States v. Smith*, No. 08-CR-379 (RPP), 2010 WL 2010870, at *3 (S.D.N.Y. May 18, 2010) (noting on similar facts that sureties could not deny that the defendant's breach in fleeing to Jamaica was willful); *United States v. Gallego*, No. 02-CV-5987 (ILG), 2003 WL 1193536, at *2 (E.D.N.Y. Jan. 29, 2003) (concluding, where the defendant failed to return to his parent's house by curfew and "then fled to Colombia without contacting his family," that "[b]y no means can these actions be seen as the result of misunderstanding, carelessness or oversight"). In short, neither the Sureties nor Sisnero-Gil have presented the Court with any mitigating factors for Sisnero-Gil's breach, and the Court is aware of none.

Turning to the second factor – the cost, inconvenience, and prejudice suffered by the government as a result of the breach – there is no question that the government incurred time and expense as a result of Sisnero-Gil's flight. (*E.g.*, Doc. No. 235 at 6.) Sisnero-Gil fled shortly before the date for which the pre-trial conference had been scheduled – just eight days before trial was set to begin. (*See, e.g.*, Doc. No. 76; Doc. No. 199 at 3.) He remained a fugitive in the Dominican Republic for more than two years before he was arrested and extradited pursuant to a warrant issued by the Court. (*See* Doc. No. 171.) Nevertheless, there is no risk of ongoing prejudice to the government since Sisnero-Gil has now been extradited and sentenced. *See United States v. Gallego*, No. 02-CV-5987 (ILG), 2003 WL 1193536, at *2 (E.D.N.Y. Jan. 29, 2003) ("[B]ecause [the defendant] is still at large, the amount of delay caused by his violation, and

thereby the prejudice to the government, is unknowable and potentially indefinite."). Accordingly, this factor does not weigh against remission at this point in time.

The fourth factor considers whether the surety has assisted in the apprehension of the fugitive. The Sureties are somewhat differently situated as to this factor. According to her sworn affidavit, Tanyi attempted to contact Sisnero-Gil and other family members who might be able to locate him and persuade him to surrender. (Doc. No. 241-1 at 1.) As it turned out, Tanyi was unable to reach Sisnero-Gil and could not obtain any useful information about his whereabouts. (*Id.*) Linette, on the other hand, did not submit a similar affidavit and does not suggest that she provided assistance to, or even attempted to assist, the government in its efforts to apprehend Sisnero-Gil. The Court therefore considers this factor to weigh in Tanyi's favor, at least to the extent she attempted to provide assistance. While the same cannot be said with respect to Linette, the Court acknowledges that this is not a case in which the record shows that either surety was "likely to have known about the defendant's location or to have been able to provide other assistance during the time he was at large." *United States v. Santana*, No. 06-CR-1083 (DC), 2009 WL 1321783, at *1 (S.D.N.Y. May 8, 2009).

The fifth factor clearly favors the Sureties. Both Tanyi and Linette are Sisnero-Gil's family members – not professional bondspersons. The Second Circuit has explained that the fact that "the sureties were members of the defendant's family . . . usually weigh[s] in favor of" remission, *Brooks*, 872 F.3d at 95–96, and the circumstances here present that usual case.

Finally, the deterrence value of total forfeiture here is relatively low. In *United States v. Agueci*, the Second Circuit upheld a district court's decision to deny a surety's motion to set aside a forfeiture order where the case at issue "was one of the most important narcotics prosecutions in years" and the defendant's "arrest and subsequent nonappearance were widely publicized." 379

4

F.2d 277, 278 (2d Cir. 1967). Under those circumstances, the district court found that "the public interest and the specific necessity of effectuating the appearance of criminal defendants in large-scale narcotics cases outweigh[ed] the humanitarian appeal of the defendant's wife and daughter," who, in order to obtain the bond, had guaranteed it in part, experiencing what the Second Circuit recognized as "legitimate claims of hardship." *Id.* (internal quotation marks omitted); *accord Gambino*, 17 F.3d at 575 (observing "that the deterrence value served by total forfeiture is especially important in high-profile narcotics and racketeering cases"). Sisnero-Gil's case and non-appearance, while important, did not reach the level of publicity and scrutiny described in *Agueci* and *Gambino*.

Unlike *Agueci*, therefore, the need for deterrence does not outweigh the "legitimate claims of hardship" of the Sureties here, 379 F.2d at 278, as demonstrated by their financial circumstances (*see, e.g.*, Doc. Nos. 225, 231, 241.) To be sure, some district courts within the Second Circuit have expressed the view that courts "cannot consider . . . the financial hardship of the movant because it is the interests of justice – and not the interests of movant – which must be considered." *United States v. Carvajal*, 674 F. Supp. 973, 974 (E.D.N.Y. 1987) (internal quotation marks omitted). In doing so, those courts generally have relied on authority originating outside of this Circuit. *See, e.g., id.* (citing a case from the Western District of Pennsylvania, which in turn quotes from a case from the Central District of California); *United States v. Pevzner*, No. 08-CR-706 (RJD), 2010 WL 1993865, at *3 (E.D.N.Y. May 18, 2010) (citing a Seventh Circuit case, which in turn cites the Western District of Pennsylvania). Those cases, however, are not binding, particularly given *Agueci*'s recognition of financial hardship interests as a consideration that may be weighed against other interests.

Having considered the five *Gambino* factors and the totality of the circumstances, the Court

5

is persuaded that justice no longer requires forfeiture as to the Sureties. *See* Fed. R. Crim. P. 46(f)(4). As noted above, Sisnero-Gil has been extradited and sentenced, the Sureties are family members, the government does not oppose remitting the bond, and there is no compelling need for further deterrence. Accordingly, IT IS HEREBY ORDERED THAT the Sureties' motions to remit the judgments against them are granted. The Clerk of Court is respectfully directed to terminate the motions pending at document numbers 225, 240, and 241.

SO ORDERED.

Dated: July 13, 2021
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation