UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARLON SISNERO-GIL, <br><br> Movant, <br><br> -v- <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | No. 23-cv-3833 (RJS) |
| UNITED STATES OF AMERICA <br><br> -v- <br><br> MARLON SISNERO-GIL, <br><br> Defendant. | No. 15-cr-605 (RJS) <br><br> MEMORANDUM AND ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

     Marlon Sisnero-Gil, proceeding *pro se*, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence of 180 months' imprisonment imposed by the Court following his guilty plea to three counts related to his participation in a drug trafficking network and abscondment from the country while awaiting trial on those drug charges.  In his motion, Sisnero-Gil contends that his counsel provided ineffective assistance by failing to translate his plea agreement and attorney-client meetings into Spanish; failing to argue that Sisnero-Gil was eligible for a sentencing reduction pursuant to 18 U.S.C. § 3553(f) and section 5C1.2 of the U.S. Sentencing Guidelines ("U.S.S.G."); and failing to object to the Court's application of a sentencing enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  For the reasons set forth below, Sisnero-Gil's motion is DENIED.

I.     BACKGROUND[1]

Sisnero-Gil's conviction and sentence arise out of his participation in a drug trafficking organization that transported kilogram quantities of cocaine from Puerto Rico to New York. (PSR ¶¶ 14–17.) After being arrested in May 2015 during a controlled delivery (*id.* ¶¶ 18–20), Sisnero-Gil was charged with one count of conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, and one count of distributing and possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). (*See* Doc Nos. 40, 57, 68.) In April 2016, just days before his trial was scheduled to begin, Sisnero-Gil utilized a false passport to abscond to the Dominican Republic. (PSR ¶ 40.) The grand jury returned a superseding indictment that additionally charged Sisnero-Gil with failing to appear in court, in violation of 18 U.S.C § 3146(a)(1). (*See* Doc No. 77.) He remained a fugitive for more than two years, until his arrest by local authorities in October 2018 and his subsequent extradition to the United States. (*See* Doc. No. 171.)

Following his return to New York, Sisnero-Gil retained new counsel, Oliver Storch. On September 18, 2019, Sisnero-Gil pleaded guilty to all three counts of the superseding indictment pursuant to a plea agreement with the government. (PSR ¶ 6.) In the agreement, the parties stipulated to a Sentencing Guidelines range of 121 to 151 months' imprisonment, based on his total offense level of 32 and criminal history category I, with a mandatory minimum term of 120 months' imprisonment on the first count. (*See* Gov't Opp'n, Ex. A ("Plea Agreement") at 3.) In

---

[1] The facts are drawn primarily from Sisnero-Gil's revised presentence investigation report ("PSR") dated January 23, 2020. (Doc. No. 196.) In resolving this motion, the Court has also considered Sisnero-Gil's amended motion to vacate (Doc. No. 250 ("Mot.")), the government's memorandum in opposition to the motion (Doc. No. 258 ("Gov't Opp'n")), an affirmation submitted by counsel who represented Sisnero-Gil during the plea and sentencing proceedings (Doc. No. 257 ("Storch Affirm.")), and the record in Sisnero-Gil's underlying criminal case. Unless otherwise specified, all citations to ECF documents refer to the docket in Sisnero-Gil's criminal case, No. 15-cr-605 (RJS).

agreeing to that Guidelines calculation, the parties stipulated to a base offense level of 32 in light of the amount of cocaine involved in the conspiracy. (*See id.*) They also agreed that a two-level increase was warranted pursuant to U.S.S.G. § 3C1.1 because Sisnero-Gil had "obstructed the administration of justice by failing to appear in Court" – *i.e.*, fleeing the jurisdiction on the eve of trial and becoming a fugitive for more than two years. (*Id.*) The parties further stipulated that, based on the information "currently available" to the government, Sisnero-Gil appeared to meet the criteria set forth in U.S.S.G. § 5C1.2 and therefore was entitled to a two-level "safety valve" reduction. (*Id.*) Finally, as relevant here, the plea agreement provided that Sisnero-Gil appeared to satisfy the conditions set forth in 18 U.S.C. § 3553(f) "for relief from the statutory minimum sentence provision," in which case he would not be subject to any mandatory minimum sentence. (*Id.*)

At the plea hearing, Sisnero-Gil was represented by Storch and utilized the services of a court-certified Spanish interpreter. (*See* Doc. No. 185 ("Plea Hr'g Tr.") at 2:6–18.) After placing Sisnero-Gil under oath, the Court inquired as to Sisnero-Gil's mental capacity and concluded that he was in fact competent to plead guilty. (*See id.* at 2:19–6:16.) The Court also confirmed that Sisnero-Gil was satisfied with Storch's representation in the case, that the plea agreement had been translated into Spanish before he signed it, and that he had a sufficient opportunity to discuss the plea agreement with Storch. (*See id.* at 6:21–7:2, 39:14–40:16.) The Court further confirmed that Sisnero-Gil understood the rights he would be giving up as a result of his decision to plead guilty, as well as the nature of each of the charges in the superseding indictment. (*Id.* at 8:25–22:19.) In reviewing the minimum and maximum penalties he faced on those charges, the Court advised Sisnero-Gil that the first and second counts carried mandatory minimum sentences of ten and five years, respectively, but explained that he might qualify for a lower sentence under the "safety valve

provision" provided that he met all of its criteria, including the requirement that he "provide[] truthful and complete information to the government prior to sentencing about the conduct involved in the crime." (*Id.* at 22:23–24:12; *see id.* 28:2–7.) As the Court made clear, and Sisnero-Gil indicated he understood, the Court would evaluate his eligibility for safety-valve relief at a later date. (*See id.* at 24:6–10 ("Just so we are clear, . . . [the Court] ha[s] no idea whether [safety-valve relief] would be applicable here. . . . [The Court is] not deciding today.").) At the conclusion of the proceeding, the Court determined that Sisnero-Gil understood his rights and knowingly waived them, and that his plea was entered knowingly and voluntarily and was supported by an independent basis in fact for each of the elements of the offenses charged. (*See id.* at 50:23–51:18.) The Court then accepted Sisnero-Gil's guilty plea and set a date for sentencing.

At the beginning of Sisnero-Gil's sentencing proceeding on November 18, 2020, the government asserted, as it had in its February 2020 sentencing submission, that Sisnero-Gil was not eligible for a safety-valve reduction. (*See* Doc. No. 235 ("Sent. Hr'g Tr.") at 10:3–7.) According to the government, during a July 2019 proffer session prior to his guilty plea, Sisnero-Gil made certain statements regarding the circumstances of his flight from prosecution. (*See* Doc. No. 199 at 3, 6.) While initially finding Sisnero-Gil's account to be credible, the government later concluded that it was at best misleading and at worst false. (*See id.* at 6.) At sentencing, Storch stated that he had discussed the issue "at length" with Sisnero-Gil – as well as with the lawyers representing those whom Sisnero-Gil previously identified as potential witnesses regarding the matter – and determined that the defense would be unable to refute the government's conclusion that Sisnero-Gil had been untruthful. (Sent. Hr'g Tr. at 10:20–24.) Because Sisnero-Gil bore the burden of proving that he was entitled to the safety-valve reduction, Storch withdrew his application for the safety-valve and conceded that Sisnero-Gil was subject to a ten-year mandatory

4

minimum sentence on the narcotics conspiracy count. (*See id.*; *see also id.* at 32:23–33:7 (reiterating that "the defense is not in a position to overcome" the government's assertion and "withdraw[ing] the application for the safety valve").)

In light of that representation, the Court did not apply the two-level safety-valve reduction when calculating Sisnero-Gil's sentencing Guidelines range. (*See id.* at 16:22–25.) The Court did apply a single two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on, at the very least, Sisnero-Gil's failure to appear in court (as set forth in the PSR and stipulated by the parties in the plea agreement).[2] (*See id.* at 17:1–19:9.) Accordingly, the Court calculated a total offense level of 34 and a corresponding Guidelines range of 151 to 188 months. (*See id.* at 19:16–22.) The Court ultimately imposed a sentence of 180 months' imprisonment, composed of concurrent terms of 150 months on the two narcotics counts and a consecutive term of 30 months on the failure-to-appear count. (*See id.* at 56:22–57:4.) Sisnero-Gil appealed his sentence, arguing only that it was substantively unreasonable, and the Second Circuit affirmed. (*See* Doc. No. 245.)

On May 4, 2023, Sisnero-Gil, proceeding *pro se*, timely moved pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction. (*See* Doc. No. 246.) The following month, Sisnero-Gil filed an amended motion, alleging that Storch provided ineffective assistance when he: (1) failed to argue at sentencing that Sisnero-Gil was eligible for a safety-valve reduction (*see* Mot. at 2–3); (2) failed to translate their meetings and the plea agreement into Spanish, causing him to "enter an unknowing and unintelligent guilty plea" (*id.* at 4); and (3) failed to object to the Court's application of the two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1 (*see id.* at 4–5).

---

[2] The Court noted that the obstruction enhancement would also have been appropriate based on Sisnero-Gil's false statements during his attempted safety-valve proffer, but did not adjust the offense level on that basis.

In support of his amended motion, Sisnero-Gil submitted a one-page declaration, in which he attested that he writes, reads, and speaks only in Spanish, and that prior to pleading guilty, he met Storch twice for approximately forty-five minutes, during which meetings "[s]ome (not all) of [their] attorney client conversation was translated by Mr. Storch's assistan[t]." (Sisnero-Gil Aff. ¶¶ 3–5.) Sisnero-Gil further averred that when Storch provided him with the plea agreement, he was "by himself without his assistant," "translated the plea agreement" in "very poor . . . Spanish," and failed to provide a written translation despite Sisnero-Gil's request that he do so. (*Id.* ¶¶ 6–9.) Finally, Sisnero-Gil attested that after pleading guilty, he "only saw Mr. Storch once" during a meeting with the government and that they "never had any conversation" about the safety-valve prior to sentencing. (*Id.* ¶¶ 11–13.)

On October 18, 2023, as ordered by the Court, Storch submitted an affirmation responding to Sisnero-Gil's allegations. Among other things, Storch stated that, during his pre-plea representation, he visited Sisnero-Gil at the Metropolitan Correctional Center ("MCC") "frequently" "with the assistance of two different experienced fluent Spanish speaking Paralegals" who communicated with Sisnero-Gil in his "Dominican dialect Spanish," and that they "painstakingly translated and carefully explained" the terms of the plea agreement "during numerous visits" prior to the change-of-plea hearing. (Storch Affirm. ¶ 14.) Storch also stated that he had "regular, meaningful[,] and extensive discussions" with Sisnero-Gil, again with the aid of a Spanish-speaking paralegal – both in-person at the MCC and then by video and telephone during the COVID-19 pandemic – regarding the government's "post plea change in position" as to Sisnero-Gil's eligibility for a safety-valve reduction. (*Id.* ¶ 4.) Storch affirmed that he thoroughly investigated the safety-valve issue, by reviewing the text messages and phone records cited by the government as evidence of Sisnero-Gil's misrepresentations and by reaching out to

counsel for each of the witnesses identified by Sisnero-Gil to see if they would be willing to testify at a *Fatico* hearing. (*See id.* ¶¶ 7–10.) Upon learning that the witnesses "would not voluntarily testify and if subpoenaed . . . would assert their respective 5th Amendment rights against self-incrimination," Storch conferred with Sisnero-Gil, who "insisted" that the witnesses not be called to testify and declined to testify on his own behalf, "fearing further exposure." (*Id.* ¶¶ 8–9.) Storch further affirmed that he advised Sisnero-Gil "numerous times" with the assistance of a Spanish-speaking paralegal that "the plea agreement terms are not final, specifically as it relates to safety valve eligibility" and that the government "reserve[d] the right" to change its position on his eligibility up until the day of sentencing. (*Id.* ¶ 11.)

The government submitted its brief in opposition to Sisnero-Gil's motion to vacate on November 1, 2023. (*See generally* Gov't Opp'n.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255, "a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Relief under section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). A claim of ineffective assistance

of counsel, if proven, constitutes constitutional error warranting relief under § 2255. *See United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A court must reject a movant's ineffective assistance claim if it fails to meet either prong. *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

When assessing counsel's performance under *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994) (citation and internal quotation marks omitted). Overall, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Moreover, an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Instead, a movant must demonstrate that counsel's unprofessional errors caused him prejudice under *Strickland*'s second prong. While this "does not require a showing that counsel's actions more likely than not altered the outcome," it does require a movant to show that "[t]he likelihood

of a different result [was] substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks omitted).

As the Second Circuit has recognized, a district court is not required to "conduct[] a full-blown testimonial hearing" before deciding a section 2255 motion, but may instead use methods to adequately "expand the record" without "the needless expenditure of judicial resources." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). Moreover, "when the judge [who presided over] the underlying proceedings also presides over the [s]ection 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the [movant]." *Puglisi*, 586 F.3d at 214. Thus, a district court "has wide discretion in developing the record it will use to determine" a section 2255 motion and can choose a "middle road [approach] of deciding disputed facts on the basis of written submissions" and the record in the underlying proceeding. *Pham v. United States*, 317 F.3d 178, 184–85 (2d Cir. 2003) (internal quotation marks omitted); *see also Puglisi*, 586 F.3d at 214 ("[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding."); *Chang*, 250 F.3d at 86 (concluding that the district court, when faced with conflicting affidavits submitted by the movant and his trial counsel, "reasonably decided that the testimony . . . would add little or nothing to the written submissions" and "would not offer any reasonable chance of altering its view of the facts").

### III.  DISCUSSION

Sisnero-Gil asserts that he received ineffective assistance of counsel in connection with his guilty plea and sentencing for three separate reasons. As set forth below, the Court concludes that no evidentiary hearing is necessary and that the existing record – which includes statements submitted under the penalty of perjury from both Sisnero-Gil and Storch, Sisnero-Gil's plea

agreement, the change-of-plea and sentencing hearing transcripts, and the parties' submissions in connection with sentencing – provides ample basis to reject Sisnero-Gil's claims.

A.      **Alleged Failure to Translate Meetings with Counsel and the Plea Agreement**

Sisnero-Gil contends that Storch's performance as counsel was constitutionally deficient because he "failed to have a qualified Spanish interpreter during his attorney client meetings" and never provided him with "a Spanish version of the plea agreement"; as a result, he insists that his guilty plea was "unknowing and unintelligent." (Mot. at 4.) But Sisnero-Gil's "highly self-serving and improbable assertions" are both conclusory and belied by the record. *Chang*, 250 F.3d at 86.

For starters, Sisnero-Gil's insistence that he was unable to communicate with counsel or understand his plea agreement is vague and wholly lacking in specificity. *See Gonzalez*, 722 F.3d at 130. Even now, he does not articulate what he misunderstood as a result of Storch's alleged failures, nor does he explain how that misunderstanding rendered his guilty plea unknowing and unintelligent. Sisnero-Gil's statements are also inconsistent with Storch's affirmation – which asserts that Storch visited Sisnero-Gil at the MCC "frequently" and with "two different experienced fluent Spanish speaking Paralegals" who "utiliz[ed] [his native] Dominican dialect Spanish" to "painstakingly" translate "the terms of the plea agreement" "during numerous visits" prior to the change-of-plea hearing. (Storch Affirm. ¶ 14.)

More importantly, Sisnero-Gil's assertions are contradicted by his own statements in open court prior to his guilty plea. At that proceeding – which was translated in real time by a certified Spanish interpreter – Sisnero-Gil confirmed under oath that he had a sufficient opportunity to discuss the case with Storch; that he was satisfied with Storch's representation; that he had reviewed and signed the "Spanish version" of an "Advice of Rights form" explaining his rights as a criminal defendant and the consequences of his guilty plea; that he had discussed that document

with Storch; and that he had the "opportunity to ask [Storch] any questions about the rights described in that document and what they mean." (Plea Hr'g Tr. at 6:21–8:10.) With respect to the plea agreement itself, Sisnero-Gil confirmed that, before executing it, he had "read it or ha[d] it translated into Spanish for [him]" and that he "ha[d] an opportunity to ask Mr. Storch any questions at all about this document, what it means, [and] what the consequences are." (*Id.* at 40:10–16.) During that same proceeding, Storch likewise confirmed that he had reviewed the plea agreement with Sisnero-Gil, that an interpreter was present when he did so, and that he had an opportunity to answer his client's questions about the agreement. (*Id.* at 40:20–41:2.) At no time did Sisnero-Gil dispute or challenge Storch's statements or otherwise assert any lack of understanding about the contents of the plea agreement. Finally, the Court explained, and Sisnero-Gil confirmed that he understood, the various consequences of his decision to plead guilty. As part of this plea colloquy, the Court specifically referenced numerous provisions in the plea agreement, including the operation of the safety-valve reduction at sentencing. (*Id.* at 22:23–24:12.) Again, Sisnero-Gil expressed no confusion or surprise at any of the Court's statements.

Because Sisnero-Gil's "[s]olemn declarations in open court carry a strong presumption of verity," the Court is entitled to rely on them in rejecting his "subsequent presentation of conclusory allegations" to the contrary. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (explaining, in affirming denial of a motion to withdraw a guilty plea predicated on an ineffective assistance claim, that "the district court was entitled to rely upon the defendant's sworn statements, made in open court," to reject subsequent assertions that he was misled about the consequences of his guilty plea). For all of these reasons, Sisnero-Gil has not established any deficient performance under the first prong of the *Strickland* standard, and his ineffective assistance claim as it pertains to his guilty plea therefore fails.

Moreover, even assuming that Sisnero-Gil's understanding of his guilty plea was somehow "compromised [by] language difficulties" (Mot. at 4), he still fails to establish prejudice under *Strickland*'s second prong. To demonstrate prejudice with respect to a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Gonzalez*, 722 F.3d at 130 (internal quotation marks omitted). Beyond his bare assertion of "prejudice[]" (Mot. at 4), Siserno-Gil does not assert, let alone show a reasonable probability, that with a proper translation of the plea agreement, he would have rejected the plea and exercised his right to proceed to trial. Sisnero-Gil's failure to allege any prejudice as to the purported translation difficulties provides an independent basis for rejecting his ineffective assistance claim.

**B.     Alleged Failure to Argue for Safety-Valve Eligibility at Sentencing**

Sisnero-Gil next contends that Storch provided ineffective assistance at his sentencing by failing to argue that Sisnero-Gil was entitled to relief under the safety-valve provisions set out in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. (*See* Mot. at 2–3.) According to Sisnero-Gil, Storch never advised him that the government disputed his eligibility for the safety-valve reduction. (*See id.* at 3; Sisnero-Gil Aff. ¶¶ 11–13.) He also maintains that he "satisfied all the criteria" of the Guidelines safety-valve provision and that counsel's failure at sentencing therefore prejudiced him by preventing him from receiving a lower sentence. (Mot. at 3.) Once again, Sisnero-Gil fails to satisfy either prong of *Strickland*.

To begin, Sisnero-Gil falls well short of demonstrating that his counsel's performance with respect to the safety-valve eligibility issue was objectively unreasonable. In contrast to Sisnero-Gil's "self-serving and improbable assertions," *Chang*, 250 F.3d at 86, Storch provided a thorough and credible explanation as to why he elected not to pursue relief under the safety valve.

Specifically, Storch affirmed that he carefully investigated the government's allegations, including by reviewing the text messages and phone records cited by the government as evidence of Sisnero-Gil's misrepresentations at his safety-valve proffer. (*See* Storch Affirm. ¶ 10.) He also reached out to counsel for each of the third-party witnesses who purportedly could corroborate Sisnero-Gil's version of events, only to be advised that none were willing to testify at a *Fatico* hearing. (*See id.* ¶¶ 7–8.) According to Storch, Sisnero-Gil likewise "insisted on . . . not calling" those witnesses and further declined to testify on his own behalf, "fearing further exposure" should he be found not credible at a *Fatico* hearing. (*Id.* ¶¶ 8–9.) Given these circumstances, Storch reasonably concluded that he would be unable to meet the burden of proof required to demonstrate Sisnero-Gil's entitlement to a safety-valve reduction, and that any attempt to argue otherwise might have negative consequences for his client.

The record below corroborates Storch's explanation. Storch sought and obtained numerous adjournments of the sentencing date based on his representations to the Court that defense counsel and the government were "in the process of resolving a major sentencing issue" (Doc Nos. 205, 219, 223) – *i.e.*, safety-valve eligibility – and that prison restrictions caused by the COVID-19 pandemic had prevented Storch from reviewing "recent discovery with Mr. Sisnero-Gil in a meaningful way" (Doc Nos. 219, 223). At the sentencing hearing itself, Storch informed the Court that he had discussed the issue "at length" with Sisnero-Gil and spoken with "counsel for [the] other involved parties," and that the defense would be unable to dispute the government's allegation of untruthfulness and prove, by a preponderance of the evidence, that he was entitled to the safety-valve reduction. (Sent. Hr'g Tr. at 10:20–24.) At no point did Sisnero-Gil challenge that assertion or seek to renew his request for safety-valve relief.

In short, the record demonstrates that Storch reasonably investigated the circumstances surrounding the safety-valve issue and reasonably concluded that, without evidence to rebut the government's allegations of untruthfulness, he could not meet his burden in proving his client's eligibility. Accordingly, because Sisnero-Gil "could not satisfy all of the eligibility requirements of [section] 5C1.2" by a preponderance of the evidence, "defense counsel's failure to pursue relief under this provision was not 'outside the wide range of professionally competent assistance.'" *United States v. DeJesus*, 219 F.3d 117, 123 (2d Cir. 2000) (quoting *Strickland,* 466 U.S. at 690); *see also United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008) ("[Defendant's] counsel could not therefore have been ineffective for failing to make a[n argument] that would have been futile.").

But even if it could be argued that Storch's performance as to the safety-valve issue was somehow constitutionally deficient, Sisnero-Gil's claim would still fail because he has not demonstrated any prejudice resulting from that conduct. For "a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130. Sisnero-Gil cannot do that here because he fails to offer any facts demonstrating how his sentencing outcome would have been different, even if Storch had pursued the safety-valve argument or sought a *Fatico* hearing. Instead, Sisnero-Gil only asserts in conclusory fashion that he "satisfied all the criteria" for safety-valve relief (Mot. at 3), without pointing to any evidence that might refute the government's allegations, and prove by a preponderance, that he was fully truthful during his safety-valve proffer. Without more, Sisnero-Gil does not come close to establishing prejudice, which provides an independent basis for denying this claim.

C.   **Alleged Failure to Object to Obstruction Enhancement**

Finally, Sisnero-Gil contends that his counsel provided ineffective assistance by failing to object at sentencing to the Court's application of the two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. (*See* Mot. at 4–5.) Although the precise contours of this argument are not entirely clear, Sisnero-Gil seems to suggest that the Court incorrectly applied the two-level obstruction enhancement because that enhancement was based on the same conduct underlying his Count Three conviction – *i.e.*, his failure to appear in court. (*See id.*) Putting aside the fact that Sisnero-Gil stipulated to the very Guidelines calculation that he now challenges, his ineffective assistance claim fails for the simple reason that he has not identified any error in the Court's calculations of his Guidelines range or imposition of his sentence. *See, e.g.*, *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) ("[F]ailure to make a meritless argument does not amount to ineffective assistance." (internal quotation marks omitted)).

Indeed, as the application note to the relevant Guideline provision explains, where a defendant is convicted of both an underlying offense and a separately charged count for failure to appear, as was the case here, the failure-to-appear count and the counts for the underlying offense are grouped together under section 3D1.2(c). *See* U.S.S.G. § 2J1.6 cmt. 3. The failure to appear is then "treated under [section] 3C1.1 . . . as an obstruction of the underlying offense." *Id.* That is exactly what the Court did in calculating Sisnero-Gil's Guidelines range: after grouping the failure-to-appear count with the other two drug-related counts pursuant to U.S.S.G. § 3D1.2(c)–(d) and U.S.S.G. § 2J1.6 (*see* Sent. Hr'g Tr. at 16:15–24; PSR ¶¶ 54–57), the Court adopted the PSR's base offense level of 32 and then added two levels for the obstruction enhancement pursuant to U.S.S.G. § 3C1.1, for a total offense level of 34 and a resulting Guidelines range of 151 to 188 months (*see* Sent. Hr'g Tr. 19:8–22; *see also* PSR ¶ 61). The Court ultimately imposed a total

sentence of 180 months' imprisonment, composed of a 150-month term on the first two counts and a consecutive 30-month term on the third count. In doing so, the Court made clear that the sentence was structured in this way to provide "total punishment" on all counts, U.S.S.G. § 2J1.6 cmt. 3 (citing U.S.S.G. § 5G1.2), while satisfying 18 U.S.C. § 3146(b)(2)'s requirement that the sentence for the failure-to-appear count run consecutive to any other counts. (*See* Sent. Hr'g Tr. 56:13–57:4.) Sisnero-Gil's ineffective assistance claim therefore must fail because (1) he has not – and cannot – specify any procedural error to which his counsel should have objected, and (2) such an objection, if it had been made, would have had no "effect on the judgment." *Strickland,* 466 U.S. at 691.

## IV.     Conclusion

For the reasons set forth above, Sisnero-Gil's motion under 28 U.S.C. § 2255 is DENIED. In addition, because Sisnero-Gil has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability. *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, Sisnero-Gil may not proceed *in forma pauperis*. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to

terminate the motion pending at Doc. No. 250 in No. 15-cr-605, to close case No. 23-cv-3833, and to mail a copy of this order to Sisnero-Gil at the address he previously provided.

SO ORDERED.

Dated:   March 14, 2025
        New York, New York

                                              RICHARD J. SULLIVAN
                                              UNITED STATES CIRCUIT JUDGE
                                              Sitting by Designation