UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA,

    -v-

MARLON SISNERO-GIL,                                No. 15-cr-605-4 (RJS)
                                                        ORDER
                    Defendant.
```

RICHARD J. SULLIVAN, Circuit Judge:

Defendant Marlon Sisnero-Gil – who is serving a 180-month prison sentence for conspiracy, narcotics distribution, and failure to appear in court – moves *pro se* for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines").  (Doc. No. 261 ("Mot.").)  For the following reasons, Sisnero-Gil's motion is DENIED.

I.     **Background**

In 2014, the United States Drug Enforcement Administration and United States Postal Inspection Service jointly began investigating a drug-trafficking organization that was suspected of shipping kilograms of cocaine from Puerto Rico to New York City and New Jersey via human couriers and the United States Postal Service.  (Doc. No. 259 ("Supp. PSR") ¶ 15.)  During that investigation, agents identified more than a dozen suspicious packages shipped from post offices in Puerto Rico, some of which Sisnero-Gil received at a deli adjoining his residence, where he also served as the building's superintendent.  (*Id.* ¶¶ 16–18.)

On May 14, 2015, after collecting one of these packages, Sisnero-Gil was arrested by agents who were surveilling the deli.  (*Id.* ¶¶ 20–21.)  The grand jury returned an indictment charging him "with one count of conspiracy to distribute and possess with intent to distribute five

or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, and one count of distributing and possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)." (Doc. No. 262 at 2; *see also* Doc. Nos. 40, 57, 68.) Sisnero-Gil was released pending trial on a $100,000 personal recognizance secured by unspecified real property in Puerto Rico, owned by Sisnero-Gil and his two sisters, Linette Sisnero-Gil and Tanyi Gil, who agreed to be jointly and severally liable should Sisnero-Gil fail to appear in court. (Doc. No. 5.) Sisnero-Gil also agreed to (1) "surrender any passport to" pre-trial services; (2) "not obtain a passport or other international travel document"; (3) limit his "personal association, residence, or travel" to the Eastern and Southern Districts of New York; and (4) submit to strict pre-trial supervision, including drug testing and treatment. (*Id.*) That bond expressly provided that failure to appear would constitute the crime of bail jumping under 18 U.S.C. § 3146(a)(1) and that it would result in the forfeiture of the bond as to Sisnero-Gil and his co-signers. (*See id.* at 6.)

Days before his trial was set to begin, Sisnero-Gil fled from the United States to the Dominican Republic using a fake passport. (Supp. PSR ¶ 40.) He remained abroad for nearly three years, until he was arrested by Dominican authorities and extradited to the United States. (*See* Doc. No. 235 ("Sent'g Tr.") at 53.) Sisnero-Gil was subsequently charged in a superseding indictment that added a third count for failure to appear in court, in violation of 18 U.S.C. § 3146(a)(1) and (b)(1)(A)(ii). (*Id.* at 6; *see also* Doc. No. 77 at 3.) On September 18, 2019, Sisnero-Gil "pleaded guilty to all three counts of the superseding indictment pursuant to a plea agreement with the government." (Doc. No. 262 at 2; *see also* Doc. No. 185.)

Following his guilty plea, the government afforded Sisnero-Gil "an opportunity to proffer with the [g]overnment in order to demonstrate that he was eligible for Safety Valve relief" under

18 U.S.C. § 3553(f).  (Doc. No. 199 ("Gov't Sent'g Ltr.") at 3.)  During the proffer, Sisnero-Gil made "statements regarding the circumstances of his flight from prosecution" that "actually caused the government to expend resources," but which the government ultimately "concluded [were] at best misleading and at worst false." (Doc. No. 262 at 4; Sent'g Tr. at 18.)  Sisnero-Gil's counsel later conceded that "the defense will not be able to meet their burden" that Sisnero-Gil "should be entitled to the safety valve."  (Sent'g Tr. at 10:22–24.)

At sentencing, the Court determined that Sisnero-Gil's base offense level was 32 given "the amount of drugs that the parties stipulated to, which [wa]s 15 kilograms of cocaine, but less than 50 kilograms of cocaine." (*Id*. at 16.)  The Court also applied "a two-level adjustment for obstruction of justice" pursuant to U.S.S.G. § 3C1.1 based on Sisnero-Gil's flight before trial. (*Id.* at 17.)  Although the Court considered imposing an additional two-level adjustment for obstruction of justice based on Sisnero-Gil's "false statements" "during the safety-valve proffer" – which the Court found to be both "material" and "actually caused the government to expend resources" (*id.* at 18) – the Court declined to do so.   Nevertheless, in light of Sisnero-Gil's flight and false statements, the Court also declined to award him any reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  As a result, the Court concluded that Sisnero-Gil's total offense level was 34.  The Court also concluded that Sisnero-Gil "ha[d] no prior criminal convictions in the United States," resulting in a criminal history category of I.  (*Id.* at 19.)  Based on Sisnero-Gil's total offense level of 34 and his criminal history category of I, the Court determined that his advisory Guidelines range was 151 to 188 months' imprisonment.  (*Id*.)

After hearing from counsel and from Sisnero-Gil, and considering the objectives of sentencing set forth in 18 U.S.C. § 3553(a), the Court ultimately sentenced Sisnero-Gil to 180 months' imprisonment, to be followed by five years of supervised release.  (*Id.* at 50–56.)  As the

Court noted during sentencing, "it's not just that" Sisnero-Gil was "involved in distributing drugs in large quantities, it's that [he] showed no respect for the law at all." (*Id.* at 52.) When Sisnero-Gil was first "caught, [he] decided to make false statements to the law enforcement officers." (*Id.*) He later "induced [his] sisters to sign a bond, putting themselves on the hook for $100,000," "[a]nd then, days before trial, [he] disappeared." (*Id.* at 52–53.) And even "with all the obstruction" he had committed up to that point, when Sisnero-Gil was given the opportunity "to take advantage of th[e] safety valve," he "lied again." (*Id.* at 54:1–4.) Indeed, at sentencing, the Court "c[ould]n't draw any other conclusion" than Sisnero-Gil's "tremendous disrespect for the court system." (*Id.*)

Sisnero-Gil appealed his conviction and sentence, which the Second Circuit affirmed. *See United States v. Sisnero-Gil*, No. 20-4102-cr, 2022 WL 289319 (2d Cir. Feb. 1, 2022). Sisnero-Gil thereafter filed a petition for a writ of certiorari before the United States Supreme Court, which was denied. *See United States v. Sisnero-Gil*, 142 S.Ct. 1688 (2022) (mem.). Sisnero-Gil later moved to vacate the conviction pursuant to 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel (Doc. No. 250); the Court denied the motion without issuing a certificate of appealability. (Doc. No. 262.) Sisnero-Gil did not appeal that judgment.

Sisnero-Gil now moves for a reduction of his sentence under section 3582(c)(2) and Amendment 821 to the Guidelines. As relevant here, Amendment 821 – which went into effect on November 1, 2023 and applies retroactively – permits (but does not require) a sentencing judge to apply a two-level downward adjustment to a defendant's offense level where the defendant had no criminal history points at the time of sentencing and his crime did not involve any of the specified aggravating factors set forth in U.S.S.G. § 4C1.1(a).

## II.    Discussion

A federal court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  However, a court may grant a defendant's motion for a sentence reduction if the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  *Id.* § 3582(c)(2).  If a court finds that a defendant is eligible for such a sentence reduction, "a court may reduce the sentence after considering the applicable factors under [section] 3553(a), but may do so only if the reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Brooks*, 891 F.3d 432, 435 (2d Cir. 2018) (internal quotation marks omitted).

Because Sisnero-Gil is a zero-point offender under the Guidelines and none of the specified exclusionary factors apply, *see* U.S.S.G. § 4C1.1(a), the Court finds, and the government does not dispute, that Sisnero-Gil is eligible for a two-level reduction under Amendment 821 (*see* Doc. No. 264 ("Gov't Ltr.") at 2).  This would have the effect of lowering Sisnero-Gil's Guidelines range from 151 to 188 months' imprisonment to 121 to 151 months' imprisonment.  *Id.*; *see also* U.S.S.G. § 4C1.1(a).[1]  Nevertheless, the Court concludes that a reduction in Sisnero-Gil's sentence is not warranted after consideration of the section 3553(a) factors.

As the Court previously emphasized at sentencing, Sisnero-Gil's involvement in an international narcotics conspiracy was extraordinarily serious.  (*See* Sent'g Tr. at 21:5–20; 22:2– 11; 54:11–23; *see also id.* at 51:1–9 ("This case involved the distribution of large quantities of cocaine.  That's a really powerful drug[] that destroys a lot of lives and a lot of families.").)  Indeed, Sisnero-Gil recognizes as much in his motion papers.  (Mot. at 3 ("Movant does not wish to attempt

---

[1] Although Sisnero-Gil contends that the revised Guidelines range after the Amendment 821 adjustment "has now become 168-210 months," *see* Mot. at 2, the adjusted range, as discussed above, is actually lower.

to downplay the instant offense, nor his role in it.  He fully admits that his conduct was serious and that punishment is just for such.").)

The seriousness of his conduct was then compounded by Sisnero-Gil's attempt to evade responsibility for that crime by "utilize[ing] a false passport to abscond to the Dominican Republic" days before his trial was set to begin.  (Doc. No. 262 at 2.)  As the Court noted during the sentencing proceeding, obstruction of that sort is actually "quite rare," reflecting that Sisnero-Gil had "no respect for the law, no respect for the Court, and no respect for the [criminal justice] process."  (Sent'g Tr. at 53:1–4.)   In addition to violating the conditions of his bail, in which he swore "to appear as directed," Sisnero-Gil also subjected his sisters – who had co-signed his bond – to a lengthy and financially burdensome forfeiture proceeding.  (Doc. No. 5 at 2, 6 (citing 28 U.S.C. § 1746); Doc. No. 87 at 7:3–17; *see also* Doc. No. 136 at 14:4–15 (noting that the Court was "willing to vacate" the forfeiture judgment against Sisnero-Gil's sisters "if [their] brother surrenders, if he comes back to court, and proceeds . . . on the charge against him.")

For almost three years, Sisnero-Gil lived as a free man in the Dominican Republic without regard to the consequences of his actions.  He never accepted responsibility and took no steps to comply with the conditions of his bail.  To the contrary, his return to the Southern District of New York required the considerable efforts and expense of law enforcement officials in the United States and the Dominican Republic.

Even after his return to the United States, Sisnero-Gil persisted in obstructing justice by making false accusations against his former lawyer, whom he accused of orchestrating his flight from justice.  Given the seriousness of his accusations, the government again expended considerable resources investigating his claims before determining that they were baseless and designed to mislead the government.  And while the Court declined to impose an additional two-

level enhancement for obstruction of justice based on that conduct, the Court made clear that Sisnero-Gil's false statements weighed heavily in the Court's determination to impose a 180-month sentence. (*See* Sent'g Tr. at 55:14–20 ("[Y]our flight, *your obstruction*, your absolute lack of respect for the law, coupled with the seriousness of this crime, coupled with your lack of acceptance of responsibility, your lack of remorse, *your continuing attempt to mislead the government and the Court*, that suggests to me that a much higher sentence is appropriate." (emphases added)).)

In light of the unique and troubling circumstances surrounding Sisnero-Gil's conduct in this matter, the Court remains convinced that the sentence originally imposed is still necessary to reflect the seriousness of Sisnero-Gil's offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence under section 3553(a).

The Court is of course mindful of Sisnero-Gil's commendable lack of disciplinary incidents and his laudable pursuit of educational programs while in prison. (*See* Mot. at 3; *see also id.* at 9–10 (report from Federal Bureau of Prisons noting no disciplinary reports in the last six months as of December 10, 2024).) The Court encourages him to continue with these positive steps towards rehabilitation. But these considerations pale in comparison to the enormous harms associated with his crimes and post-arrest conduct. For these reasons, the Court again concludes that Sisnero-Gil's 180-month "sentence remains sufficient but not greater than necessary to accomplish the purposes of sentencing set forth in section 3553(a)." *United States v. Epskamp*, No. 12-cr-120 (RJS), 2025 WL 1726967, at *3 (S.D.N.Y. June 20, 2025) (citing *United States v. Shields*, No. 22-cr-28 (SVN), 2024 WL 1932704, at *3 (D. Conn. May 1, 2024) (denying Amendment 821 motion because "the [s]ection 3553(a) factors continue to support the original . . . sentence")).

**III.    Conclusion**

For the reasons set forth above, Sisnero-Gil's motion for a reduction in sentence is

DENIED.  The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No.

261.


SO ORDERED.

Dated:        September 23, 2025
              New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation